# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 71010-9-I |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| D.S., | ) | |
| | ) | |
| Appellant. | ) | FILED: July 21, 2014 |
| | ) | |

DWYER, J. — After a juvenile court bench trial, D.S. was convicted of two counts of assault in the fourth degree with sexual motivation for having touched the breasts of two of his classmates. D.S. contends that the evidence was insufficient to support the trial court's finding that he committed the alleged offenses during the charging period. We hold that the evidence was sufficient to convict D.S. of one charge, but not the other. Accordingly, we affirm in part and reverse in part.

I

In January and February of 2013, D.S. attended eighth grade at Mount Baker Middle School in Auburn. B.S., E.B., and A.C.[1] also attended eighth grade at Mount Baker Middle School at that time. Students at Mount Baker created a game called "Slap Ass Fridays," which involved hitting one another on the

---

[1] D.S., B.S., E.B., and A.C. are all juveniles. Accordingly, we refer to them by using their initials.

buttocks. D.S. participated in "Slap Ass Fridays."

One of the students D.S. slapped on the buttocks on a "Slap Ass Friday" was B.S. D.S. sometimes called her "Big [B.]" and "Juicy," and told her and A.C. that they had big butts that he would like to have sex with. B.S. did not ever agree to participate in "Slap Ass Fridays," and felt uncomfortable when D.S. slapped her on the buttocks. B.S. testified that this happened in January 2013. B.S. asked D.S. to stop. D.S. stopped "for a moment" but later "would come up to [B.S.] and like slap [her] boob."

B.S. testified that she saw D.S. do something similar to E.B. on one occasion.[2] A.C. also saw D.S. slap E.B. on the buttocks and that E.B. would always tell D.S. to stop. A.C. testified that this happened after Christmas Break of the 2012-2013 school year, but did not remember a specific day or time. A.C. also saw D.S. grab E.B.'s breasts in the hallway at the school.[3] A.C. did not recall when this occurred.

On February 27, 2013, B.S., A.C., and E.B. reported D.S.'s actions to the

---

[2] B.S. was not specific about what she saw happen to E.B., just that it was "sexual harassment."

[3] On redirect examination, the following exchange took place between the prosecutor and A.C.

Q: . . . I just want to go back to kind of what we were talking about when these events happened, and you said they happened during your eighth-grade school year. Do you remember if it was the beginning, middle or end of the school year?
A: It was the end of the school year.
Q: So after Christmas break?
A: Yes.
. . . .
Q: Now, you mentioned [E.B.] being slapped on the butt and you saw [D.S.] do that, correct?
A: Yes.
Q: Did you ever see him touch her anywhere else?
A: In her breasts.

vice principal, Denise Wheeler. Wheeler referred the matter to the Auburn Police Department.

The State charged D.S. with two counts of assault in the fourth degree with sexual motivation. The charging period for these offenses was January 3 through February 28, 2013.

The trial court found D.S. guilty as charged. At the conclusion of the trial, the trial court explained, "If this had just been about slapping on the butt, given the Slap Ass Friday game at school, it would be a closer case. Touching on the breast is an entirely different matter." The trial court stated that it was "finding proof beyond a reasonable doubt as to touching on the breast being assault in the fourth degree with sexual motivation." The trial court did not make any finding as to whether touching on the butt would constitute the same offenses. The trial court sentenced D.S. to 12 months of supervision and 24 hours of community restitution.

D.S. appeals.

II

D.S. contends that the trial court erred by finding him guilty of two counts of assault in the fourth degree with sexual motivation. This is so, he asserts, because the evidence was insufficient to prove that he committed the alleged offenses during the charging period. We agree with respect to one of his convictions.

When reviewing a sufficiency of the evidence challenge, "'the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). In order to find a defendant guilty beyond a reasonable doubt, the trier of fact must "reach a subjective state of near certitude of the guilt of the accused." Jackson, 443 U.S. at 315. All reasonable inferences from the evidence must be drawn in favor of the State. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Salinas, 119 Wn.2d at 201. "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

D.S.'s sufficiency challenge centers on the time frame during which the alleged incidents occurred. B.S. testified that D.S. slapped her butt sometime in January. B.S. also testified that D.S. touched her breast after she told him to stop slapping her butt. B.S. reported these incidents to the vice principal on February 27, 2013. This evidence was sufficient for the trier of fact to find that D.S. committed assault in the fourth degree with sexual motivation against B.S. by touching her breast sometime between January 3 and February 28, 2013.

However, the evidence was not sufficient to support the conviction with respect to E.B. B.S. testified that she saw D.S. commit some type of "sexual harassment" against E.B., but did not specify what that entailed. A.C. saw D.S.

- 4 -

slap E.B. on the butt after Christmas Break of the 2012-2013 school year. However, the trial court specifically stated that it was finding D.S. guilty based on his touching of B.S.'s and E.B.'s breasts, and made no findings with respect to his touching of their buttocks. Thus, in order for the conviction with respect to E.B. to stand, there must be sufficient evidence that D.S. touched E.B.'s breasts between January 3 and February 28, 2013. The evidence presented at trial was not sufficient to support such a finding.

On direct examination, A.C. did not mention any touching of E.B.'s breasts. On redirect examination, A.C. testified that "these events" occurred sometime during "the end of the school year" after Christmas break. A.C. also testified on redirect that she witnessed D.S. touch E.B.'s breasts. When asked on recross examination when she saw D.S. touch E.B.'s breasts, A.C. answered "I don't remember." The issue of timing did not arise again.

As commonly understood, "after Christmas break" and "the end of the school year" typically refers to the period between January and June. This evidence is not definite enough to prove with "near certitude" that an act took place between January 3 and February 28. See Jackson, 443 U.S. at 315. A.C. did not testify as to a more specific date, stating instead that she did not remember when D.S. touched E.B.'s breasts. Without a definite time frame for when D.S. touched E.B.'s breasts, a rational trier of fact could not have found beyond a reasonable doubt that D.S. assaulted E.B. between January 3 and February 28, 2013. Therefore, we reverse D.S.'s conviction with respect to E.B. and remand with instructions to vacate the conviction.

We affirm D.S.'s conviction with respect to B.S.

Affirmed in part, reversed in part.

We concur: